|  | UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA, |
|---|---|
| **EMIN GÜN SIRER**, Plaintiff, v. **EMRE AKSOY,** Defendant. | CASE NO.: 21-cv-22280 |

# DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, LACK OF STANDING, AND JURISDICTIONAL ISSUES

1. Defendant, EMRE AKSOY, by and through the undersigned counsel, hereby moves This Honorable Court to enter an order dismissing this matter pursuant to Rule 12(b), Fed R. Civ. Proc. For failure to state a claim upon which relief may be granted. And in support thereof would show:

## LEGAL STANDARD ON MOTION TO DISMISS

2. Defendant's Motion to Dismiss alleges that the Complaint fails federal pleading standards and should be dismissed, under Rule 12 of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted.

3. Rule 8 requires that a complaint include a "short and plain statement" demonstrating that the claimant is entitled to relief. Fed R. Civ. P. 8. To survive a Rule 12(b)(6) motion, a complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

1

556 U.S. 662, 663 (2009). As a corollary, allegations absent supporting facts are not entitled to this presumption of veracity. Id. at 681.

4. When evaluating a motion to dismiss, the Court must take all of the well-pled factual allegations as true. Id. at 664. However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663. And, the Court's duty to accept the factual allegations in the complaint as true does not require it to ignore specific factual details "in favor of general or conclusory allegations." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007). The Court must dismiss a complaint that does not present a plausible claim demonstrating entitlement to relief.

## ANALYSIS OF COUNT I

5. Since Plaintiff avails himself to the public, Plaintiff should be considered a public person for the purposes of this action. Florida law is well settled that it's in the best interest of free speech and public policy for the general public to feel comfortable discussing issues of the most influential people out there, and those heavily impacting the way we think, vote, and ultimately, live. For a public person subject to defamation to succeed in their claim, they are required to prove the defendant(s) published or made the statement with actual malice – knowledge the statement was false, or with reckless disregard for its veracity. Plaintiffs who possess fame in a community and are always a public figure. *Saro Corp. v. Waterman Broadcasting Corp.*, 595 So. 2d 87, 89 (Fla. Dist. Ct. App. 2d Dist. 1992).

6. In order for Plaintiff to broach a "plain statement of claim," they must demonstrate actual malice on the part of the Defendant. *Smith v. Russell*, 456 So. 2d 462, 464 (Fla. 1984). In cases concerning statements of opinion regarding public officials and public figures, the legal standard requires Plaintiff to demonstrate that Defendant had knowledge of

falsity or reckless disregard for the truth – also known as actual malice. *Florida Medical Center, Inc. v. New York Post Co.*, 568 So. 2d 454, 458 (Fla. Dist. Ct. App. 4th Dist. 1990). Whereas the complaint fails to even allege such claims it is facially deficient and fails to establish a Prima Facia case. This is supported by a U.S. Supreme Court Decision in 1974, which required the proving of actual malice by a private plaintiff against a media defendant in the case of "public or general concern." *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).

7.      In conjunction with the greater protection afforded to persons speaking and publishing openly about public figures, typically, statements of public concern are granted greater protection from liability for defamation. Issues of public concern enjoy greater protection due to the promotion of an informed society. Without such protections, journalists, media outlets, and even regular citizens would be unduly censored and less-informed. Florida defines 'public concern' in the context of the First Amendment, to mean matters "relating to any matter of political, social, or other social concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Gawker Media, LLC v. Bollea*, 129 So. 3d 1196, 1200 (Fla. Dist. Ct. App. 2d Dist. 2014).

8.      Statements will be considered "pure opinion" if they "set forth, in the article, the facts on which the opinion is based or when the parties to the communication are aware of the facts or assume their existence and the opinion is clearly based on those facts." *Smith v. Taylor County Pub. Co.*, 443 So. 2d 1042, 1047 (Fla. Dist. Ct. App. 1st Dist. 1983).

9.      When concerning public officials, the burden of proof is placed on the public official themselves to prove – by clear and convincing evidence – that the statement is false.

*Zorc v. Jordan*, 765 So. 2d 768, 771 (Fla. Dist. Ct. App. 4th Dist. 2000). The single count complaint only purports fiat towards the veracity of the claims that it makes and provides inadequate conclusory statements to support a claim for damages.

10.     The fourth element essential for bringing an actionable defamation claim is damages, and in Florida, the law requires the plaintiff to have suffered actual damages. In defamation law, the harm and effect of the alleged defamatory statement(s) on a person's reputation are typically quantified in the form of damages – compensation that is usually monetary and meant to act as a deterrent or punishment for one's injury and loss.

11.     The Florida Supreme Court stated that libel per se only exists in the modern era as a "useful shorthand" for defamatory words. *Mid-Florida Television Corp. v. Boyles*, 467 So. 2d 282, 283 (Fla. 1985). Subsequently, such statements and ruling have been interpreted to mean that "a media defendant must nevertheless plead and prove actual injury." *Edelstein v. WFTV, Inc.*, 798 So. 2d 797, 798 (Fla. Dist. Ct. App. 4th Dist. 2001). Whereas the complaint fails to allege any quantifiable damage and or injury without any rational nexus between the alleged injury in connection with the speech of the Defendant the Plaintiff has not met his burden for a plain statement of claim.

12.     Punitive damages are also known as punishment damages – meant as a deterrent for oftentimes extremely egregious actions by the defendant. They may also be referred to as "exemplary damages," and in order to recover punitive damages in a defamation action in Florida, plaintiffs must plead and prove common law or express malice. *Hunt v. Liberty Lobby*, 720 F.2d 631, 650 (11th Cir. Fla. 1983). The complaint doesn't even broach either of these standards and therefore fails to state a claim upon which relief can be granted.

13. Express malice may be proven by either showing the actual publication, or other evidence which demonstrates the defendant's feelings towards the plaintiff. Id at 651.

14. For matters of public concern, the Florida Supreme Court has established stricter standards needed for recovering punitive damages – and requires plaintiffs to prove malice by a preponderance of the evidence (that it was more likely than not the defendant communicated a defamatory statement with malice). Additionally, plaintiffs must also prove that the defendant "knew the statement was false or had serious doubts as to its truth," this time by clear and convincing evidence. In re Std. Jury Instructions in Civil Cases — Report No. 09-01 (Reorganization of the Civil Jury Instructions), 35 So. 3d 666, 732 (Fla. 2010).

15. Actual damages are sought when a plaintiff experiences real and actual harm, injury, or loss due to slanderous, libelous, and otherwise defamatory communications. They are commonly referred to as "compensatory damages," and in order for a Florida plaintiff to recover them, they must plead and prove actual damages. Am. Airlines, Inc. v. Geddes, 960 So. 2d 830, 833 (Fla. Dist. Ct. App. 3d Dist. 2007).

16. The required elements to substantiate a linear path in fact or in law are facially deficient in the complaint.

**WHEREFORE**, Defendant, Emre Aksoy, respectfully requests that this Court enter an order dismissing this action with prejudice and awarding Defendant prevailing party costs and fees as allowable under Florida law and any and all other relief the Court deems appropriate.

## FAILURE TO JOIN AN INDISPENSABLE PARTY

17. Under Rule 19(a), the court asks whether Guidant is a "person to be joined if feasible," i.e. whether it is a "necessary party" to the litigation. A party is deemed necessary

under Rule 19(a) (1) if: (1) its absence will prevent the court from granting complete relief to the existing parties, or (2) the party claims an interest relating to the subject matter of the action and its absence in the litigation may (i) as a practical matter impair or impede its ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest. See Fed. R. Civ. P. 19(a) (1); 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Section §1604 (2 ed 1997). If the court concludes that the Plaintiffs company is a necessary party under Rule 19(a) (1), then it must order its joinder, if feasible. Fed. R. Civ. P. 19 (a) (2). If the court concludes that the company is a necessary party, but that its joinder is not feasible, then under Rule 19(b) it must then determine whether, "in equity and good conscience," the action should proceed among the existing parties without it or be dismissed. Fed. R. Civ. P. 19(b). Enza Inc. v. We the People, Inc., 838 F. Supp. 975, 977 (E.D. Pa. 1993).

18. The court must consider whether the Plaintiffs company will have an adequate forum if the action is dismissed. Provident, 390 U.S. at 109, 88 S. Ct. at 738. This is in concert with the jurisdictional claims below that an action on these very merits is already in process in Turkey and since Defendant lacks the required contacts with the forum state the Plaintiff and indispensable third party have already availed themselves to the jurisdiction of Turkish Courts. As such, not only is dismissal appropriate but dismissal with prejudice. Failure to do so presents the possibility for international law issues that are far beyond the intent and scope of any and all treaties and agreements between the United States and the nation of Turkey.

19. Based on the foregoing, the Plaintiffs company, Ava Labs, is both a necessary and indispensable party to this action. Accordingly, the court should grant the defendant's

motion to dismiss the action for failure to join an indispensable party under Rule 19(b), making it unnecessary for the court to reach the defendant's alternative challenges to the sufficiency of allegations of the complaint.

## LACK OF PERSONAL JURISDICTION

20. The Complaint is subject to dismissal for pleading defects. However, the arguments based on the jurisdictional allegations in the Complaint, this court lacks personal jurisdiction over the Defendant.

## LEGAL STANDARD

21. "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and still must "accept thefacts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara*, 916 F.2d at 1514 (11th Cir. 1990).

22. A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. First, the court must

7

determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute. Second, the court must determine whether personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

## FLORIDA LONG ARM STATUTE

23. Plaintiffs allege that the Court has jurisdiction over Defendants under Florida's long-arm statute. The long-arm statute provides, in pertinent part:

24. (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:

25. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state [or]

26. Committing a tortious act in this state.
27. A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

28. Fla. Stat. §§ 48.193(1)(a)(1)–(2), 48.193(2). Plaintiffs contend that jurisdiction is proper under all of these provisions. Defendant addresses each in turn.

## GENERAL JURISDICTION UNDER SECTION 48.193(2)

29. The reach of the general jurisdiction provision of the Florida long-arm statute is co- extensive with the limits of the Due Process Clause, so the Court need only ascertain whether its exercise of jurisdiction over the Defendants "would exceed constitutional bounds." *Carmouche v Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)). The Due Process clause permits personal

jurisdiction so long as the nonresident defendant has certain minimum contacts with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Here the Defendant had traveled to Miami on vacation. He didn't conduct any business and the alleged act did not occur within the state of Florida.

## CONDUCTING BUSINESS § 48.193(1)(A)(1)

30. "To establish that a defendant is 'conducting' or 'carrying on a business for the purposes of Fla. Stat. § 48.193(1)(a)(1), 'the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit.'" *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (per curiam) (quoting *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000)). In determining whether Defendants' activities "show a general course of business activity," the Court considers "(1) the presence and operation of an office in Florida, (2) the possession and maintenance of a license to do business in Florida, (3) the number of Florida clients served, and (4) the percentage of overall revenue gleaned from Florida clients." Id. (quoting *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005) (internal quotation marks omitted)). Another relevant factor is a defendant's marketing and advertising in Florida. See *Carmel & Co. v. Silverfish, LLC*, No. 12-21328, 2013 WL 1177857, at *3 (S.D. Fla. Mar. 21, 2013) (citing *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996)).

31. In the preparation and execution of Defendants' Miami vacation, he obtained a B1 Visa passport. Defendant has never had and does not presently have a work visa for the United States. Nor did Defendant engage anyone in the Commonwealth of Florida in any

9

business transaction for pecuniary benefit. These required elements to the complaint aren't even alleged and as such fails to state a claim for which relief can be granted.

32.     As previously stated, the record does not show a general course of business activity by Defendants in Florida. It is undisputed by all parties that Defendants do not have an office in Florida, do not possess or maintain a license to do business in Florida, and does not engage in marketing or advertising in Florida. Furthermore, Plaintiffs do not specifically allege how many customers, or the total percentage of sales derived from Florida, but rather, Plaintiffs allege only that Defendants mere physical presence substantiates transacting business. As a result, the Court neither knows the exact or approximate number of Florida clients allegedly targeted by Defendants, nor the exact or approximate percentage of Defendants' gross sales derived from Florida sales. Accordingly, based on the factors relevant to a determination of jurisdiction under section 48.193(1)(a)(1), the record does not support a finding that Defendant was engaged in a general course of business activity in Florida. See *Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) (finding that selling subscriptions to an internet site to an unknown, relatively small number of Florida residents does not constitute carrying on a business in Florida under section 48.193(1)(a)(1)).

33.     Furthermore, the alleged Youtube video was only shown to a limited private audience of subscribers and none of those were in the state of Florida.

## DUE PROCESS

34.     Assuming that Plaintiff has satisfied the long-arm statute requirement, Plaintiffs now must establish that jurisdiction over Defendants comports with the Due Process Clause of the Fourteenth Amendment:

35.     In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts within the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

36.     *Louis Vuitton*, 736 F.3d at 1355 (citations omitted). The plaintiff must establish the first two prongs, and if it does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. (quoting Diamond Crystal Brands, 593 F.3d at 1267).

37.     In the case at bar the only thing "Florida" about it is that Mr. Sirer is affiliated with a company and Mr. Aksoy came here on vacation once. This is hardly up to muster for jurisdictional purposes. This isn't even alleged in the pleading.

## "ARISING OUT OF" OR RELATEDNESS

38.     Under the specific jurisdiction calculus, a plaintiff's claim "must arise out of or relate to at least one of the defendant's contacts with the forum." Id. (citing *Fraser*, 594 F.3d at 850) (internal quotation marks omitted). The inquiry for purposes of specific jurisdiction must focus on the direct causal relationship between the defendant, the forum, and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). "[A] relationship among the defendant, the forum, and the litigation is the essential foundation of in personam jurisdiction...." Id. (internal quotation marks omitted).

39.     In the instant case, Plaintiffs' claims arose out of the Defendants' contacts with Florida via the internet. Although the internet has an international reach, it is accessible

11

in Florida and used by Florida consumers to consume content. Defendants used the internet to sell and distribute investment advice, in doing so, Defendant doesn't gain any pecuniary benefit from Florida customers. The video at the heart of the complaint was only shown to a limited number of non-Floridians. Thus, the first requirement is not satisfied because there is not a direct causal relationship between Defendants, Florida, and Plaintiffs' defamation claims. See *Louis Vuitton*, 736 F.3d at 1356.

## PURPOSEFUL AVAILMENT

40. Under the traditional purposeful availment analysis, a plaintiff must demonstrate that the defendants purposely availed themselves of the privilege of doing business in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). Specifically, the Court assesses the nonresident's contacts with the forum state and asks whether those contacts: " are related to the plaintiff's cause of action; involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and are such that the defendant should reasonably anticipate being hauled into court in the forum." *Louis Vuitton*, 736 F.3d at 1357 (citing *U.S. Sec. &. Exch. Comm.. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)).

41. Traditional jurisdictional analyses are not upended simply because a case involves technology that facilitates a party's reach across state lines. Rather, the Court must apply the same factors it applies in all cases to determine personal jurisdiction. Indeed, the use of an online market, as opposed to a brick and mortar store, does not create a "virtual moat" around the defendant, preventing jurisdiction except where the defendant is incorporated or has offices. *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008). "[I]nternet forums such as eBay expand the seller's market literally to the world and sellers

know that and avail themselves of the benefits of this greatly expanded marketplace Sellers cannot expect to avail themselves of the benefits of the internet-created world market that they purposefully exploit and profit from without accepting the concomitant legal responsibilities that such an expanded market may bring with it." *Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 820 (E.D. Mich. 2006).

42.   Courts have declined to exert jurisdiction over defendants who engage in "one-shot affairs" through the internet, noting that such defendants do not assume any continuing obligations, and thus are not engaged in any substantial business in the forum state. See *Boschetto*, 539 F.3d at 1017-18 (finding no purposeful availment because defendant's one EBay auction sale was not part of a broader e-commerce activity—the product was only temporarily advertised and the listing closed once the item was sold—rather, the defendant's contact with the forum was extinguished once the product was purchased); see also *Dynamic Software Services v. Cyberbest Tech., Inc.*, No. 13-04217, 2014 WL 3373924, at *8 (N.D. Ca. July 9, 2014).

43.   Here, Defendants marketed and sold investment advice through the internet, and received no pecuniary benefit from Florida customers. The Youtube video in question was never viewed by anyone in the State of Florida. Such conduct is not sufficient to the purposeful availment requirement. See *EnviroCare Tech., LLC v. Simanovsky*, No. 11-3458, 2012 WL 2001443, at * 4 (E.D.N.Y. June 4, 2012) (finding that the sale and shipment of three products through Amazon to the forum state is sufficient to satisfy due process's "minimum contacts" inquiry); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2nd Cir. 2010) (finding purposeful availment when the defendant offered his product for sale to New York consumers on his company's website and sold the product to New York

13

consumers, thus invoking the benefits and protections of its laws).

## FAIR PLAY AND SUBSTANTIAL JUSTICE

44. The Court must also determine whether exercising personal jurisdiction over Defendants would offend traditional notions of "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 477. The Court considers the following factors in its analysis:

   a) the burden on the defendant;
   b) the forum's interest in adjudicating the dispute;
   c) the plaintiff's interest in obtaining convenient and effective relief; and
   d) the judicial system's interest in resolving the dispute. *Louis Vuitton*, 736 F.3d at 1358.
   e) The burden is on Defendants to show that asserting jurisdiction over them would be unconstitutional. *See Diamond Crystal Brands, Inc.*, 593 F.3d at 1274.

45. The defendant is prejudiced in this forum in that his permanent residence is thousands of miles away and **an ongoing action over the same controversy has been filed** and is **being litigated in a Turkish Court**. (Istanbul 13. Asliye Hukuk Mahkemesi (Istanbul 13th Civil Court Case Nb: 2021/302) This is a brazen attempt to obtain a judgment in the US and domesticate that judgment in Turkey over the same controversy. Not only does this defy the purpose and intent of fair play and substantial justice but rises to the level of **vexatious litigation**. Litigating the same matter in two Countries simultaneously would present such a burden that regardless of the outcome it would be subject to being overturned on appeal on that issue alone. Beyond the obvious, the Court has no interest in duplicating judicial efforts or foreign countries and the possible ramifications and complications that are inherent with conflicting international law. Plaintiffs have not presented the requisite

"compelling case" that exercising jurisdiction would be constitutionally fair.

**WHEREFORE**, Defendant Emre Aksoy, respectfully requests that this Court enter an order dismissing this action with prejudice and awarding Defendant prevailing party costs and fees as allowable under Florida law and any and all other relief the Court deems appropriate.

### FAILURE TO SATISFY CONDITION PRECEDENT PER FLA. STA. 770.01

46. Courts have previously ruled that bloggers and other similar social media pundits are an alternative medium of news and public comment (*Comins v. VanVoorhis*, 135 So. 3d 545). Although the express language of section 770.01 does not limit the type of defendant entitled to pre-suit notice, "[e]very Florida court that has considered the question has concluded that the pre-suit notice requirement applies only to 'media defendants,' not to private individuals." *Zelinka v. Americare Healthscan, Inc.*, 763 So. 2d 1173, 1175 (Fla. 4th DCA 2000).

47. The "media defendant" issue arises because of the certain language appearing in prior decisions of the Florida Supreme Court. *In Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1112 (Fla. 2008), the court commented that "under Florida's defamation law, a prospective plaintiff is required to give a media defendant notice five days before initiating a civil action." However, this language does not necessarily mean that only media defendants are entitled to pre-suit notice under section 770.01.6

48. The latest, and perhaps gravest, challenge to the journalistic establishment is the blog. Journalists accuse bloggers of having lowered standards. But their real concern is

15

less high-minded - it is the threat that bloggers, who are mostly amateurs, pose to professional journalists and their principal employers, the conventional news media. A serious newspaper, like The Tampa Bay Times, is a large, hierarchical commercial enterprise that interposes layers of review, revision, and correction between the reporter and the published report and that to finance its large staff depends on advertising revenues and hence on the goodwill of advertisers and (because advertising revenues depend to a great extent on circulation) readers. These dependencies constrain a newspaper in a variety of ways. But in addition, with its reputation heavily invested inaccuracy, so that every serious error is a potential scandal, a newspaper not only has to delay publication of many stories to permit adequate checking but also has to institute rules for avoiding error - like requiring more than a single source for a story or limiting its reporters' reliance on anonymous sources - that cost it many scoops.

49.     It is hard to dispute that the advent of the internet as a medium and the emergence of the internet as a means of free dissemination of news and public comment have been transformative. By some accounts, there are in the range of 300 million blogs worldwide. The variety and quality of these are such that the word "blog" itself is an evolving term and concept. The impact of blogs has been so great that even terms traditionally well-defined and understood in journalism are changing as journalists increasingly employ the tools and techniques of bloggers — and vice versa. In employing the word "blog," we consider a site operated by a single individual or a small group that has primarily an informational purpose, most commonly in an area of special interest, knowledge, or expertise of the blogger, and which usually provides for public impact or feedback. In that sense, it appears clear that many blogs and bloggers will fall within the broad reach of

"media," and, if accused of defamatory statements, will qualify as a "media defendant" for purposes of Florida's defamation law as discussed above. Therefore, those individuals are entitled to pre-suit notice as a condition precedent to the suit. (Comins v. VanVoorhis, 135 So. 3d 545)

50.     Accordingly, the Defendants' utilization of various internet platforms to discriminate information, receive real-time revision and feedback qualifies Defendant as a media defendant that would require Plaintiff to provide the required 5-day notice. The defendant was only served with this complaint at the airport in Miami when he was on vacation visiting family. There was no pre-suit notice given.

**WHEREFORE**, Defendant Emre Aksoy, respectfully requests that this Court enter an order dismissing this action with prejudice and awarding Defendant prevailing party costs and fees as allowable under Florida law and any and all other relief the Court deems appropriate.

| | |
|---|---|
| _____ | /s/ Gautier Kitchen |
| ROOK ELIZABETH RINGER, ESQ. | GAUTIER KITCHEN, ESQ. |
| Florida Bar No. 1015698 | (*pro hac vice* forthcoming) |
| LENTO LAW GROUP, P.A. | Florida Bar No.: 0689793 |
| 222 San Marco Ave., Ste. "C" | THE KITCHEN LAW FIRM |
| St. Augustine, FL 32084 | 103 N. Meridian Street |
| 904.602.9400 (Office) | Tallahassee, Florida 32301 |
| 904.299.5400 (Fax) | Telephone: (850) 329-6715 |
| reringer@lentolawgroup.com | gautier@kitchen-law.com |
| *Attorney for Plaintiff* | juditch@kitchen-law.com |
| | *Attorney for Plaintiff* |

17

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 16th, 2021, a true and correct copy hereof has been furnished by ECF, and/or certified U.S. Mail to the following counsel:

**ROCHE FREEDMAN LLP**
**Devin (Velvel) Freedman,**
**Esq.200 S. Biscayne Blvd.**
**Suite 5500 Miami, Florida 33131**
**Tel: (305) 753-3675**
**Email: vel@rcfllp.com**

Kyle Roche (*pro hac vice* forthcoming)
Joseph Delich (*pro hac vice* forthcoming)
99 Park Avenue, Suite 1910
New York, NY 10016
Email: kyle@rcfllp.com
Email: jdelich@rcfllp.com

                              Respectfully Submitted,

                              _____
                              ROOK ELIZABETH RINGER, ESQ.
                              LENTO LAW GROUP, P.A.
                              *Attorney for Plaintiff*