**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.  21-cv-22280-BB**

EMIN GÜN SIRER,

                    Plaintiff,

        vs.

                                        Miami, Florida
                                        March 14, 2022
EMRE AKSOY,                              Pages 1-25

                    Defendant.
_____

**TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING**
**BEFORE THE HONORABLE ALICIA M. OTAZO-REYES**
**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:

FOR THE PLAINTIFF:
                        *Roche Freedman, LLP*
                        BY:  JORDANA HAVIV, ESQ.
                        BY:  KYLE ROCHE, ESQ.
                        MAYA S. JUMPER, ESQ
                        99 Park Avenue
                        Suite 1910
                        New York, New York 10016

FOR THE DEFENDANT:
                        *The Kitchen Law Firm*
                        BY:  WILLIAM GAUTIER KITCHEN, ESQ.
                        1865 Brown Street
                        Tallahassee, Florida 32308


TRANSCRIBED BY:        DAWN M. SAVINO, R.P.R., C.R.R.
                       Official Federal Court Stenographer
                       400 N. Miami Avenue, 10S03
                       Miami, Florida  33128
                       Telephone:  305-523-5598

**PROCEEDINGS RECORDED BY AT&T TELECONFERENCING SERVICE**
**TRANSCRIPT PRODUCED BY MANUAL STENOGRAPHY**
**AND COMPUTER-AIDED TRANSCRIPTION**

1                    P-R-O-C-E-E-D-I-N-G-S

2          COURTROOM DEPUTY:  Emin Sirer versus Emre Aksoy, case

3     number 21-22280-civil-Bloom.

4          Counsel, please state your appearances for the record.

5          MS. HAVIV:  Good afternoon.  This is Jordana Haviv of

6     Roche Freedman on behalf of Plaintiff.  I'm joined on the phone

7     by my co-counsel Kyle Roche and Maya Jumper.

8          THE COURT:  Thank you.

9          MR. KITCHEN:  And my name is -- I apologize.  My name

10    is Gautier Kitchen on behalf of the Defendant Emre Aksoy.

11         THE COURT:  All right.  Thank you very much.  All

12    right.  We're here on the notice of hearing filed by the

13    Plaintiff.  From what I can tell from the notice, on Page 2 it

14    says that many of Defendant's responses are substantially

15    deficient.  Defendant has not produced any documents in response

16    to Plaintiff's request for production, and objects to the

17    production of other relevant documentation without

18    justification.  Also admits they have failed to retain

19    information.

20         So from what I can tell, it seems that Plaintiff is

21    saying that certain requests for production have not been

22    complied with, but I'm not quite sure which ones they are.  I

23    don't know if Plaintiff is inferring or in some way laying the

24    groundwork for a claim of spoliation, but I don't see that yet,

25    so I will hear from Plaintiff's counsel exactly what discovery

1    responses you want me to address.

2         But before I go there, I notice that there's also a

3    request for a modification of the court's scheduling order.

4    Obviously the court's scheduling order is entered by the

5    district judge presiding over this case, Judge Bloom.  The

6    referral for discovery disputes does not encompass any referral

7    for modifying the schedule.  The schedule is imposed by the

8    district judge, and it's the district judge's prerogative to

9    amend it.  So to the extent that the second part of the notice

10   under the subheading "modification of the scheduling order", Ms.

11   Haviv, you are seeking relief from me, I am sorry to tell you

12   that you would need to present that request to Judge Bloom.

13        So with those preliminary remarks, let me hear from Ms.

14   Haviv if you can provide me -- I do see -- all I saw in the

15   attachments was the responses. It doesn't tell me what the

16   requests were.  But if you can just give me some guidance on

17   exactly which requests you are claiming are substantially

18   deficient so we can go forward and make rulings on that.

19        MS. HAVIV:  Yes, Your Honor.  Thank you.  And we'll

20   take the request for the change in the schedule to Judge Bloom.

21        We're coming to you because, you know, we're trying to

22   follow the schedule that Judge Bloom had set forth.  It's an

23   aggressive schedule which has a trial in August of this year,

24   and at this point as you noted, and I'll provide a little bit

25   more color just so we can all be up to speed, we're having a lot

1   of trouble getting cooperation from the Defendant.

2         As an initial matter --

3         THE COURT:  I'm sorry.  I'm sorry.  I'm sorry, ma'am.

4   Let me just clarify the record.  I was just reciting what was on

5   your notice.  I haven't noted anything myself.  I have made no

6   ruling.  So go ahead.

7         MS. HAVIV:  Okay.  Thank you.  Sorry about that.

8         As in the first instance what we're trying to do is

9   first get procedurally proper responses to our discovery

10  requests.  Under the rules, both the federal rules and the local

11  rules, I believe there are obligations to sign discovery

12  requests by either an attorney or the client, or in some cases

13  for interrogatories both, and we can't get those responses

14  signed by the Defendant despite multiple requests.

15        THE COURT:  All right.  Let's take those issues one at

16  a time.  Interrogatories are supposed to be accompanied by

17  what's called the jurat which is the verification by the person

18  responding to the interrogatory.  You're telling me that has not

19  been provided by Defendant, correct?

20        MS. HAVIV:  That's correct.

21        THE COURT:  All right.  Let me hear from defense

22  counsel regarding the answers to interrogatory that, according

23  to the Plaintiff, have not been sworn as required by the rule.

24        MR. KITCHEN:  Judge, Mr. Aksoy resides in Turkey.

25  Giving his signature is logistically hard.  We can certainly do

1  that.  We've made every attempt to answer every question with

2  specificity.  We can certainly get it verified, we just need

3  logistically how to do that.  I mean, if we need to FedEx stuff

4  to Turkey, I guess we can try to do that.  It's just

5  logistically difficult.

6          THE COURT:  Well, how long do you need to get your

7  client to execute the jurat page as required by the local rules

8  and the federal rules?

9          MR. KITCHEN:  Well Judge, the truth is I don't know how

10  long that takes.  What I'd prefer to do is not have to rehash

11  it, and tell me exactly what answers, as they stand, are

12  deficient so we can correct those, have them signed and do it

13  all at once as opposed to having what we've provided signed,

14  then find that it's deficient, and I'm still not certain how it

15  is deficient, and then start the whole thing back over again.

16          THE COURT:  I see.  So you are asking that as to the

17  interrogatories, Plaintiff's counsel bring up the disputed items

18  and once I rule on it, then you would submit a comprehensive

19  answer to interrogatories accompanied by a jurat page.  And then

20  how long would that take you with FedEx? I don't know what the

21  FedEx service is to Turkey, but would a week after that be

22  sufficient?

23          MR. KITCHEN:  Judge, I would --

24          (Cross-talk)

25          MR. KITCHEN:  I would like to say yes but again, I

1  don't know the turn-around time on FedExing something and then

2  getting it returned.  I can represent to the Court and to

3  Counsel we'll do it as fast as the mail runs.  You know, we --

4          THE COURT:  All right.

5          MR. KITCHEN:  Okay.

6          MS. HAVIV:  Your Honor, if I could just perhaps

7  streamline this, we have no problem with Defendant executing a

8  verification and using an electronic signature.  We are not

9  requesting a wet signature, and I believe the rules also allow

10  for an electronic signature.  But we just have not been able to

11  get an electronic signature despite multiple requests for one.

12          THE COURT:  Okay.  All right.  So let me ask you this,

13  as they stand right now, the answers to interrogatories, which I

14  think show up on an e-mail that was sent to me, are there any

15  items there that you want me to rule on, and then defense

16  counsel can then re-format all this and add a jurat page to it

17  and have it served on you.  I think from what I can tell on --

18  let me see.  On what you submitted as your notice, I think

19  starting at Page 8 where you're saying thanks (unintelligible)

20  please provide a signed final version of your responses by close

21  of business tomorrow, and then following that there are items

22  one, two, three and so on.  Are those the answers to

23  interrogatories that you have received that are missing the

24  verification, and are there any here that you are objecting to

25  and that you need me to resolve?  And I'm addressing you, Ms.

 1    Haviv.

 2              MS. HAVIV:  Yes, Your Honor.  There's one category,

 3    I'll start with the first category of discovery requests just to

 4    take two examples, and I think we weren't meant to attach the

 5    discovery responses themselves to our notice of hearing but, you

 6    know, we're happy to provide those to Your Honor should that be

 7    useful to you.

 8              I can just describe them at a high level.  We requested

 9    documents and information --

10              THE COURT:  I'm sorry.  Ma'am, ma'am, ma'am --

11              MS. HAVIV:  Sorry.

12              THE COURT:  Ms. Haviv, I don't need descriptions at a

13    high level.  I need to know what answers to interrogatories you

14    find insufficient.  Point me to those so I can read the request

15    and the answer and decide if it or is not sufficient.  That's

16    how I do this.

17              MS. HAVIV:  Okay.  On -- so let me just find the page

18    in the document that you're looking for to direct you to that

19    information.  So for Number 7, and this just provides the

20    answer, so I can provide you -- I can speak over the phone what

21    the request was if that's helpful.  I know they're not before

22    you, but we want to make this as easy as possible.

23              So our Interrogatory Number 7 sought identification of

24    all persons and/or entities who have asked, contracted, retained

25    and/or compensated you to promote, highlight or recommend their

1   crypto-assets or crypto-assets to which they are affiliated, own

2   or hold to other third parties either directly or through your

3   social media accounts.  And you can see on Page 9 the response

4   to that request is "I don't think that this is relevant to the

5   case.  I am contacted by hundreds of people every month for the

6   past four years for promotional requests.  I do not keep a

7   record of these inquiries and won't be able to identify all of

8   them."

9        We believe that such documents are relevant to

10  Plaintiff's defamation claim, particularly to the extent that

11  Defendant had agreements to promote other cryptos, potentially

12  to the detriment of AVAX.  They're central to establishing

13  Plaintiff's right to damages, particularly insofar as they speak

14  to motive.  So we would like those documents to be produced by

15  Defendant.

16       THE COURT:  All right.  Let me hear from Mr. Kitchen

17  regarding your answer to Interrogatory Number 7.

18       MR. KITCHEN:  Well, I think the answer explains it.

19  They're asking for a list of everyone who contacts him, and he

20  says he doesn't keep a list of everyone, and he's contacted by

21  hundreds of people a week.  They're referring to a document,

22  he's telling you there is no document.  He will certainly say

23  people that have hired him, he has a contract with or anything

24  of that nature, but everyone who's contacted him he has no

25  record of.

1    THE COURT:  All right.  Does he have any records at all

2    aside from your objection that you're saying this is not

3    relevant to the case?  Does he have my -- does your client have

4    any information that is responsive to Interrogatory Number 7?

5    MR. KITCHEN:  To my knowledge --

6    THE COURT:  Maybe not all of it, none.  So he has --

7    let me hear the question again, the interrogatory, Ms. Haviv?

8    MS. HAVIV:  Identify all persons and/or entities who

9    have asked, contracted, retained, and/or compensated you to

10   promote, highlight or recommend their crypto-asset or

11   crypto-assets to which they are affiliated, own or hold, to

12   other third parties either directly or through your social media

13   account.

14   THE COURT:  So as I read the -- as I hear the

15   interrogatory, it sounds like entities who have either

16   contracted or in some fashion sought the services of the

17   Defendant.  You're saying that there's no such entities or

18   persons, or are you saying that you don't have records of them?

19   Obviously if there's a contract, Mr. Kitchen, your client would

20   have a record of such contracts.

21   MR. KITCHEN:  Correct.  But that's not all they're

22   asking for.

23   THE COURT:  Well, but at least if you have -- I'm

24   sorry, sir.  If you have some of the responsive information,

25   then obviously you need to provide that.  So I'm going to ask

1   that you amend -- that you amend your answer to Interrogatory

2   Number 7 to provide whatever responsive information you do have,

3   all right?  All right.

4          Let's move on then.  What other interrogatory do you

5   need, Ms. Haviv, for me to address?

6          MS. HAVIV:  Yes.  In Interrogatory Number 9 seeks for

7   Interrogatory Number 7 certain related information, and I'll

8   just read it for you specifically, so we would request that the

9   Defendant be obligated to amend his response to that

10  interrogatory as well.  It states for each person and/or entity

11  -- sorry.  Go ahead.

12          THE COURT:  Go ahead.  Go ahead.

13          MS. HAVIV:  For each person and/or entity identified in

14  Interrogatory Numbers 7 and 8, provide the amount of money or

15  other assets or consideration each person offered and/or paid

16  you to directly or indirectly promote, depress, or otherwise

17  affect the price, value and/or reputation of any crypto-asset

18  including but not limited to the AVAX crypto-asset.

19          THE COURT:  All right.  So if you find that there are

20  contracts, Mr. Kitchen, and so on, then you can amend Number 9.

21  Now, if there are concerns about either trade secret or

22  confidentiality or things like that, there is a way whereby the

23  parties can agree on a protective order and matters can be

24  produced subject to the protective order.  So if that is the

25  case, then counsel can get together, agree on a protective order

1    and then you can make your answers and/or production,

2    Mr. Kitchen, subject to that.  Those protective orders generally

3    have a provision for challenging the confidentiality

4    designations.

5             MR. KITCHEN:  Sure.

6             THE COURT:  So amend Number 7 and amend Number 9.  And

7    then, of course, I'm not necessarily telling you to make it

8    confidential, I'm just saying that if that is a concern, that is

9    the way to eliminate the concern.

10            MR. KITCHEN:  Yes, Judge.

11            THE COURT:  All right.  Next, Ms. Haviv.  What else?

12            MS. HAVIV:  Yes.  The Request for Production of

13   Documents Number 4 and Number 7.

14            THE COURT:  Wait, wait, wait.  Wait.  Are you done with

15   interrogatories?

16            MS. HAVIV:  I believe so.  I wanted to stay on topic

17   because they request documents related to what we just

18   discussed.

19            THE COURT:  I appreciate that, but I'd like to make

20   sure we're finished with the interrogatories first.

21            MS. HAVIV:  I'm just double-checking my notes.  I think

22   that should be good on the interrogatories.

23            And that the others are -- is there a date specific

24   that we could ask for a date for those Interrogatories 7 and 9?

25            THE COURT:  I will address the timing issues in a

1    moment.  So Interrogatories Number 7 and 9 are the two at issue,
2    and I have ruled on them.  And so then once this information is
3    gathered, Mr. Kitchen, then you will resubmit all of the answers
4    to amended answers with an electronic jurat signature.  Is that
5    how you understand that you're able to proceed?  Mr. Kitchen?
6                MR. KITCHEN:  Yes, Judge.  That part's clear.
7                THE COURT:  Okay.  All right.  So we'll come up with a
8    date for everything once we do the requests for production.  All
9    right.
10               MR. KITCHEN:  Okay.
11               THE COURT:  Ms. Haviv, take up your requests for
12   production.  Tell me what you -- do I have that in your
13   materials?
14               MS. HAVIV:  I'm not sure that's within the e-mail.
15               THE COURT:  I don't see it.  All right.  So which
16   requests for production, if you can tell me.  I think you seemed
17   to be indicating that there are a couple that are tied to
18   Interrogatories Number 7 and 9.  So tell me about those first.
19               MS. HAVIV:  Yes.  Request for Production Number 4 seeks
20   all documents, communications, recordings and/or materials
21   relating to or referencing any requests or agreements, written
22   or verbal, made between you and any third party to promote or in
23   any way affect the value or price of any crypto-asset.  And the
24   response we received was "will not share, they contain my trade
25   secrets and not relevant to the defamation case at all."  And of

1   course we are willing to stipulate to a confidentiality order as

2   Your Honor suggests, but we do believe these are relevant for

3   the reasons we discussed.

4            THE COURT:  So it sounds like Request Number 4 kind of

5   is the counterpart for Interrogatory Number 7.

6            MS. HAVIV:  Yes.

7            THE COURT:  All right.  Any other -- did you indicate

8   that you had another one that matches Interrogatory Number 9 or

9   does Number 4 cover both of them?

10           MS. HAVIV:  Request for Production Number 7 seeks all

11  documents and communications relating to acts made by you or at

12  your direction to promote or with the anticipated result of

13  promoting any crypto-asset, either directly or indirectly,

14  including through your social media accounts.  And those are the

15  two requests for production that align with the interrogatory

16  request seeking information related to the Defendant's promotion

17  of other crypto-assets.

18           THE COURT:  All right.  So Requests 4 and 7 correspond

19  to Interrogatories 7 and 9.  I will make the same ruling, to

20  amend the responses to those in the same fashion.  And again, at

21  the discretion of counsel, if it needs to be subject to a

22  protective order, then you all can agree on that and submit that

23  for my approval.

24           Any other requests for production that are in dispute,

25  Ms. Haviv?

```
1              MS. HAVIV:  Yes, Your Honor.  Request for production
2   Number 10 seeks all documents related to your ownership or
3   transactions in any crypto-asset, including but not limited to
4   AVAX.  And our view is that documents related to Defendant's
5   ownership of crypto-assets, including AVAX are relevant to
6   Plaintiff's damages.  For example, if Defendant profited off of
7   crypto-assets through his defamation of the Plaintiff or
8   Avalanche, that would be relevant to the calculation of damages
9   in this case.  So we're seeking an order that Defendants produce
10  any such documents.
11             THE COURT:  What was the response to Request Number 10?
12             MS. HAVIV:  The response was "will not share my
13  personal finances as they are not relevant to the case."
14             THE COURT:  All right.  Okay.  Mr. Kitchen, do you want
15  to address Request Number 10?
16             MR. KITCHEN:  Yes, Judge.  Insofar as Mr. Aksoy's
17  personal investments, I don't see how that's relevant to the
18  defamation claim.
19             Secondly, I think it's a little overly broad.  As you
20  know, cryptocurrency is kind of like stocks.  You can buy it and
21  it fluctuates.  So as of what date do they want to know what he
22  held and what he made, do they want the losses as well?  You
23  know, if specificity is needed on this, we're going to go back
24  through someone's investment portfolio.
25             THE COURT:  All right.  Okay.  Can you narrow Request
```

1    Number 10 so that you tie it -- I think, Ms. Haviv, you said you

2    were looking for this in terms of damages that you would seek

3    from the alleged defamation.  Can you tie it to that?

4          MS. HAVIV:  Yes, Your Honor.  We can narrow the time

5    frame from 2020 to April 2021.  But I would like to add that

6    there were responses -- pardon me, there was a time frame, a

7    narrow time frame suggested in the request for production which

8    was February 1, 2019 to present.  But we're willing to limit it

9    a little further in order to streamline the process and

10   hopefully get those documents from Defendant.

11         THE COURT:  All right.  So give me the dates exactly

12   from what month in 2020 to what month in 2021.

13         MS. HAVIV:  January 2020 to April 2021 would be our

14   requested date.

15         THE COURT:  January 2020.  And when is the defaming --

16   allegedly defaming statement made?

17         MS. HAVIV:  In early 2021.

18         THE COURT:  In early 2021?

19         MS. HAVIV:  Your Honor, we're totally willing to, you

20   know, meet and confer with Defendants on a narrower time frame

21   if they can, you know, come to the table.  Again, we regret that

22   we're here without having had the opportunity to do so before

23   presenting the issue to the Court.

24         THE COURT:  All right.  All right.  Okay.  Meet and

25   confer on Number 10.

1           Okay.  Anything else?

2           MS. HAVIV:  Yes, Your Honor.  There were a couple of

3   requests for production where Defendant responded to the request

4   for production with links to URLs on the internet and as Your

5   Honor knows, there's, you know, rules governing how documents

6   are to be produced in the ordinary course of business.  So we

7   would seek -- and I can read out those requests for you.  We

8   would seek an order compelling Defendant to produce those

9   documents as is done in the ordinary course of business with the

10  appropriate metadata and the like as opposed to sending URLs by

11  e-mail.

12          THE COURT:  Let me see if I understand.  There are a

13  couple of requests for production where the response to the

14  discovery request was a link that you're supposed to click on

15  and get the documents from there?  Is that what happened?

16          MS. HAVIV:  Yes, Your Honor.

17          THE COURT:  I see.  Let me hear from Mr. Kitchen on

18  that.

19          MR. KITCHEN:  Well Judge, I'm not sure exactly on those

20  links as I sit here how much documentation is connected to them.

21  You know, some of this can be so voluminous that it's costly and

22  inefficient to print out everything and put it in a physical

23  form when somebody can click on it and see it there.  But we'll

24  do what Your Honor says, obviously.

25          THE COURT:  Well --

1            MR. KITCHEN:  But that certainly adds to time and cost.

2            THE COURT:  Well, you don't necessarily need to -- I

3 mean, there are ways of downloading documents as PDFs, there are

4 ways of Bates numbering documents electronically.  I think paper

5 discovery is becoming rarer and rarer, but there's a way that

6 you can actually produce responsive documents in an electronic

7 fashion.

8            So what requests for production are those, Ms. Haviv?

9            MS. HAVIV:  That would be Request for Production Number

10 3 and Request for Production Number 5.

11            THE COURT:  All right.  So as to 3 and 5, I will

12 require that you also meet and confer on the best way to

13 produce, hopefully electronically, the responsive documents

14 rather than the whole link.  It may be that if somebody clicks

15 on that link and gets a lot of extra stuff that's not necessary.

16 So meet and confer on the best way to respond to those.

17            Anything else?

18            MS. HAVIV:  Yes, Your Honor.  I just wanted to circle

19 back to Request for Production 10, just because we've had some

20 trouble trying to get counsel on the line, we would like to

21 resolve that today if possible.  And in a good faith

22 representation we're willing to narrow the time frame from

23 September 2020 to April 2021 if Defendants are willing to agree

24 to that and agree to produce those documents for that relatively

25 limited time frame.

1       THE COURT:  Oh, I see.  So rather than meet and confer

2   on Number 10, now you're offering to narrow the time frame

3   September 2020 to April 2021.

4       Let me hear from Mr. Kitchen on Number 10.

5       MR. KITCHEN:  I appreciate narrowing the time frame,

6   that will probably make the job easier.  I have no problem with

7   that.

8       THE COURT:  All right.  So all right.  No need to meet

9   and confer on that one.  Meet and confer on 3 and 5 on the best

10  way to respond.

11      All right.  Deadlines then.  In terms of the

12  interrogatories, amend Numbers 7 and 9.  And then turning the

13  whole package around with an electronic signature, it seems to

14  me that one week should be enough but if you need ten days, I'll

15  give you that Mr. Kitchen.

16      MR. KITCHEN:  I would prefer ten days, Judge, only

17  because of the time difference and getting ahold of my client.

18      THE COURT:  Okay.  All right.  Ten days from today.

19      And then the production of Request Numbers 4, 7 and 10

20  that we know already what needs to be produced, can you produce

21  that in ten days also or do you need longer time for that?

22      MR. KITCHEN:  Well Judge, I think that ten days is okay

23  now, but I would ask for some leeway.  If we notify counsel that

24  this is coming, we're compiling it and need a couple more days,

25  and I don't think counsel would have a problem with that.  I'm

1    not talking about anything -- months or anything like that, but

2    I don't want to something that would physically --

3          THE COURT:  All right.  So here's what I'll do.

4    Produce documents responsive to Request Numbers 4, 7 and 10 on a

5    rolling basis, completion in 15 days, That way there's a date

6    certain.

7          Now, what about can you meet and confer and figure out

8    the way to produce the documents responsive to Request Numbers 3

9    and 5 also within 15 days?

10          (Cross-talk)

11          MR. KITCHEN:  I can certainly meet and confer in that

12    amount of time.

13          THE COURT:  All right.

14          MS. HAVIV:  Same for Plaintiffs.  Thank you.

15          THE COURT:  For 3 and 5, meet and confer and produce

16    responsive documents in the best way possible in 15 days.  All

17    right.  And Request for production Number 10 has been narrowed

18    to the time frame September 2020 to April 2021.

19          All right.  So other than what you need to go to Judge

20    Bloom for, is there anything else that I can do for you today?

21    And I'll issue a written order.

22          MS. HAVIV:  Thank you, Your Honor.  I think -- sorry,

23    I'm just conferring with my colleague on -- we were wondering

24    about should we address requests for substantial completion of

25    all discovery to Your Honor, or should that go into the

1    stipulation to Judge Bloom?

2             THE COURT:  I'm sorry.  I don't understand the

3    question.  I thought you were bringing up to me anything that

4    you had issues on and I'm giving deadlines.  So what more do you

5    need?

6             MR. ROCHE:  Hi, this is Kyle Roche from Roche Freedman.

7    So I just want -- I think what we were looking for guidance on

8    is a date certain for all document production.  I think today

9    has been very productive in narrowing the issues we have, but

10   just to keep the parties moving forward and --

11            THE COURT:  I see.

12            MR. ROCHE:  And guidance, going to Bloom on the

13   schedule if we can get a date certain for substantial completion

14   of all document discovery for 30 days from now, I think --

15            THE COURT:  Okay.

16            MR. ROCHE:  I think -- frame the schedule.

17            THE COURT:  I understand.  So as to all -- because I

18   just gave you dates for the requests for production that were in

19   dispute.  You're saying that production of all responsive

20   documents to, I think this is request -- the first request for

21   production?  Can I call it that?  First request for production?

22            MR. ROCHE:  Yes, Your Honor.

23            THE COURT:  To be completed 30 days from now, that's

24   beyond this other limitations I've given you and you would want

25   that on a rolling basis also?

1          MR. ROCHE:  Yes, Your Honor.

2          THE COURT:  Okay.  Let me hear from Mr. Kitchen on

3     everything that is owed to Plaintiffs, a drop-dead date of 30

4     days from today with production on a rolling basis, and of

5     course that would incorporate these other specific deadlines I

6     have given you.  Is that something that you can perform on and

7     agree to at this time?

8          MR. KITCHEN:  Well, I guess I'm confused as to what

9     they're talking about.  I thought we already had a discovery

10    deadline.  I think the rules say what the turn-around is on a

11    request for production, and Your Honor has just given a deadline

12    on specific ones.  I don't know --

13         THE COURT:  They're waiting on other stuff.  It sounds

14    like they're waiting on some more production that presumably you

15    promised, so there's no issues for me to resolve.  Am I hearing

16    that correctly or am I reading too much into it?

17         Let me put it another way.  Mr. Kitchen, other than

18    Request for Production Numbers 4, 7, 10, 3 and 5, have you fully

19    produced responsive documents as to everything else?

20         MR. KITCHEN:  I believe we've given what we have to the

21    extent it exists.  I have to double-check that, Judge, but

22    certainly we intend to.  If there is something there, I intend

23    to turn over all of the requests for production again with the

24    client.  But I think 30 days is reasonable, but I also think

25    that the rules already contemplate that.

1        THE COURT:  Right.  I'm sorry, the rules would have

2   said 30 days from service of the request.  I think these

3   requests were served some time back, so I think we're beyond the

4   30 days right now.

5        Let me hear, Ms. Haviv.

6        MS. HAVIV:  Thank you, Your Honor.  Yes, these requests

7   were served in January and they have not produced a single

8   document in discovery.  So we're just looking to get the ball

9   rolling on this.

10       THE COURT:  I see.  All right.  I think -- so then I

11  apprehended it correctly, Mr. Kitchen.  Apparently there are

12  things that you said you would produce and you haven't yet, and

13  they want you to produce it by no later than 30 days from today.

14       MR. KITCHEN:  And that's fine, Judge.  Of course I

15  don't know anything I've promised or said I'm going to produce,

16  but I certainly intend to produce everything we have that's

17  responsive, and 30 days from now is fine with me.

18       THE COURT:  All right.  So complete all production

19  responsive to the first request for production beyond these

20  deadlines that I'm imposing, do it on a rolling basis but get it

21  all done in 30 days.  Does that satisfy your concern, Mr. Roche?

22       MR. ROCHE:  Yes, it does.  I think we have one minor

23  point that's sort of related to that.  Ms. Haviv?

24       MS. HAVIV:  Yes.  For example, there is one of the

25  document requests, the first document request, and I can read

1    that out loud in just a moment, but we know that there are

2    responsive documents in response to that request.  The subject

3    matter of those documents is alleged in the complaint and we

4    haven't seen those documents.  For example -- and in fact the

5    response was "there is none".

6         And just to give Your Honor more color, request for

7    production of document seeks -- the first request for production

8    seeks all documents --

9         THE COURT:  I'm sorry.  I'm sorry, Ms. Haviv.  I'm

10   sorry, Ms. Haviv.  I asked you to tell me what requests for

11   production were at issue, now you're telling me that request --

12   for Number 1 they told you there are no documents and you

13   believed that there are documents.  So it's not like Defendant

14   said yes, I will produce responsive documents.  It's that

15   Defendant said I don't have any documents and you're saying that

16   you believe that he does.  So that is still in dispute.  That

17   has not been resolved.

18        So let me hear from Mr. Kitchen on Request for

19   Production Number 1.  Your response says that there are no

20   responsive documents; is that accurate?

21        MR. KITCHEN:  If that's what our response is, then that

22   is what I was told by the client and that's what's been

23   answered.

24        THE COURT:  All right.  When a respondent to a

25   discovery request says I don't have any responsive documents,

```
 1   then you basically accept that representation.  If it's shown to
 2   be false later, then of course there would be consequences.  So
 3   maybe you all can talk some more about what you think, meet and
 4   confer.  I cannot make somebody produce documents they say they
 5   don't have.  That's -- you know, there are consequences when
 6   they turn out to have them and they didn't produce them.
 7               MR. ROCHE:  Your Honor, I appreciate --
 8               THE COURT:  Anything else?
 9               MR. ROCHE:  Yes, this is Kyle Roche.  I just wanted to
10   make one point on that.  There's two issues on Mr. Kitchen's
11   response.  The first is we don't have signed responses from him.
12               MR. KITCHEN:  That's already been addressed.  We
13   addressed that.
14               MR. ROCHE:  Not as to the RFPs.
15               THE COURT:  I'm sorry.  Yes.  On the requests for
16   production how did you get a response?  Also another e-mail?
17               MR. ROCHE:  It was the e-mail, and Rule 8 requires all
18   pleadings and discovery responses to be signed by counsel.  So
19   we would ask --
20               THE COURT:  Right.  Hold on.  Hold on.
21               MR. ROCHE:  Sorry.
22               THE COURT:  Mr. Kitchen, on the request for production
23   it does not require the signature of your client.  The response
24   to the request for production, which is a separate document from
25   the documents that are being produced, you respond to the
```

1    requests or production and say, for example, yes, I will produce

2    responsive documents to this or no, I don't have these

3    documents, or I object, and so on.  That if you have not

4    provided and you just handled that by way of e-mail, you need to

5    comply with the rules on that, and I'm assuming that you should

6    be able to do that in the ten days that I'm also requiring for

7    you to amend your interrogatory answers.  So provide a full,

8    compliant response to the request for production in 10 days.

9         Now Mr. Roche, you said there was another issue?

10        MR. ROCHE:  The second issue, and it's related to this,

11   is what I hear Mr. Kitchen say is well, I asked my client and

12   that's the response.  I don't think the rules -- under the rules

13   that's sufficient.  I do think counsel's obligated here to do a

14   good faith collection and to review himself to ensure that the

15   documents that are responsive to our requests have been

16   produced, and what I've heard is essentially, which is

17   concerning to me, is that there's been no document collection to

18   date.  And so I don't know if we want to handle this -- I'm

19   sorry.

20        THE COURT:  All right.  No, I am not going to

21   micromanage Mr. Kitchen's professional conduct.  He will have to

22   submit a response to the request for production signed by him.

23   It will be a paper that's signed by him as an officer of the

24   court.  If he chooses to sign that paper without doing what is

25   required of him ethically, that is his problem.

1          Anything else I can do for you today?

2          MR. ROCHE:  Nothing, Your Honor.  Thank you.  That was

3    very helpful.

4          THE COURT:  All right.  I will issue a written order.

5    Thank you very much.

6          MS. HAVIV:  Thank you, Your Honor.

7          MR. KITCHEN:  Thank you.

8          COURTROOM DEPUTY:  Court's adjourned.

9          (PROCEEDINGS CONCLUDED)

10                         * * * * *

11                  C E R T I F I C A T E
     I certify that the foregoing is a correct transcript from the
12   digital audio recording of proceedings in the above-entitled
     matter.
13

14   3/15/2022_____          /s/ Dawn M. Savino, R.P.R., C.R.R.
     Date                      DAWN M. SAVINO, R.P.R., C.R.R.
15

16

17

18

19

20

21

22

23

24

25